SANFORD P. ROSEN & ASSOCIATES, P.C.
Attorneys for the Debtor and
  Debtor in Possession
747 Third Avenue
New York, New York 10017-2803
(212) 223-1100
Sanford P. Rosen (SR-4966)
Kenneth M. Lewis (KL-7679)

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------x
In re

2427 RESTAURANT CORP. d/b/a                  Case No. 05-48722 (SMB)
  Eugene's and Gypsy Tea,
                                             Chapter 11
               Debtor.

-----------------------------------x
2427 RESTAURANT CORP. d/b/a
  Eugene's and Gypsy Tea,

               Plaintiff,
                                             Adv. Pro. No.
        - against -

MELVIN DITKOWICH,

               Defendant.

-----------------------------------x

## COMPLAINT

     2427 Restaurant Corp. d/b/a Eugene's and Gypsy Tea, the
above-captioned debtor and debtor in possession (the **"Debtor"**)
and plaintiff herein, by its attorneys, Sanford P. Rosen &
Associates, P.C., as and for its complaint against Melvin
Ditkowich (**"Ditkowich"**), the defendant herein, respectfully
represents as follows:

### NATURE OF ACTION

     1.  In this action, the Debtor seeks to avoid the

Debtor's guaranty of amounts due and owing to Ditkowich with respect to the $450,000 Note (as defined below), as well as any security interests granted to Ditkowich with respect to such guaranty as a fraudulent conveyance under section 273 of the New York Debtor and Creditor Law.

## JURISDICTION, VENUE AND STATUTORY PREDICATE

2.   This court has jurisdiction over this complaint pursuant to 28 U.S.C. §§ 157 and 1334.  Venue in this jurisdiction is proper pursuant to 28 U.S.C. §§ 1408 and 1409. This is a "core" proceeding pursuant to 28 U.S.C. § 157(b).

3.   The statutory predicate for the relief sought herein are sections 105 and 544 of the Bankruptcy Code, and section 273 of the New York Debtor and Creditor Law.

## BACKGROUND AND PARTIES

4.   The Debtor filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code on October 16, 2005 (the **"Petition Date"**).

5.   The Debtor is continuing to operate its business and manage its property as a debtor in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.

6.   No trustee, examiner or creditors committee has been appointed.

7.   The defendant, Melvin Ditkowich, is an individual residing in the State of Florida.

8.   On December 19, 2005, the Debtor's affiliate, The Beer Garden, Inc. d/b/a Roxy (the **"Beer Garden"**) commenced a

chapter 11 case in this Court. The case bears no. 05-60194, and has been assigned to the Honorable Stuart M. Bernstein, Chief United States Bankruptcy Judge.

## THE DEBTOR'S BUSINESS

9.   The Debtor, a New York corporation, owns and operates a nightclub/lounge known as Eugene's, at 27 West 24th Street, New York, NY 10010. It also operates a nightclub/lounge known as Gypsy Tea at 33 West 24th Street.

10.   Eugene M. DiNino, the Debtor's president, owns all of the stock of the Debtor. He is also the president of, and owns all of the stock of, the Beer Garden.

## THE DITKOWICH LOANS

11.   Pursuant to an Agreement dated as of February 7, 2002 (the "**Settlement Agreement**") among Ditkowich, Joyce Contracting, Inc. (an affiliate of Ditkowich), Mr. DiNino, the Beer Garden, the Debtor, and E.M.D. Enterprises, Inc., an affiliate of the Debtor because it is also owned and controlled by Mr. DiNino, the parties reached a settlement with respect to, among other things, a mortgage foreclosure action commenced by Ditkowich against Mr. DiNino, the Beer Garden and the Debtor, concerning property located in Dewitt, New York and N. Syracuse, New York (the "**Mortgage Action**"), and an action on a note executed by Mr. DiNino and the Beer Garden (the "**Note Action**").

12.   Under the Settlement Agreement, Mr. DiNino, the Beer Garden and the Debtor consented to a judgment of foreclosure and the sale of the properties. The parties also agreed that so

long as there were no default under the Settlement Agreement, the amount owing to Ditkowich in connection with the Mortgage Action would be $1.2 million (the **"Mortgage Debt"**), which, the parties agreed, would be deemed paid in full upon the consummation of the Mortgage Action.  Upon information and belief, one or both of the mortgages secured the Debtor's repayment of a note in the original amount of $686,750, which it executed in 1997.

13.   The Note Action had been commenced by Ditkowich and Joyce Contracting, Inc., seeking to collect at least $912,000 due under certain notes executed by Mr. DiNino and the Beer Garden.  These notes were secured by certain other mortgages on the properties (i.e., not the mortgages that were the subject of the Mortgage Action).

14.   With respect to the settlement of the Note Action, Mr. DiNino and the Beer Garden agreed to pay Ditkowich $450,000, by executing and delivering a note in such amount (the **"450,000 Note"**), payable in 96 equal, consecutive, monthly installments of $6,592.60, including principal and interest (at 9% per annum). The parties also agreed that an additional $370,000 would remain secured by such mortgages; however, without recourse to Mr. DiNino and the Beer Garden.

15.   Under the Settlement Agreement, Mr. DiNino, the Beer Garden and the Debtor further agreed that, in the event of a default of any of their obligations thereunder, they would be obligated to pay Ditkowich, in addition to the Mortgage Debt, $300,000, together with interest at the rate of 9% per annum from

4

the date of demand (the **"$300,000 Payment"**).

16.    The Settlement Agreement also provided that Mr. DiNino, the Beer Garden, and the Debtor would grant to Ditkowich a security interest in all of their tangible personal property, securing their respective obligations.  Accordingly, on February 7, 2002, the Debtor executed a General Security Agreement (the **"2002 Security Agreement"**), pursuant to which it granted to Ditkowich a security interest in all of its tangible personal property, including, but not limited to equipment, inventory and fixtures.

17.    Pursuant to the Amendment to Agreement dated April 14, 2004, Ditkowich agreed to advance $200,000 to Mr. DiNino and the Debtor.  This loan was evidenced by a promissory note dated as of April 14, 2004 (the **"$200,000 Note"**), which was executed by the Debtor and Mr. DiNino.  To secure its obligations under the $200,000 Note, on April 20, 2004, the Debtor executed another General Security Agreement, pursuant to which it granted to Ditkowich a security interest in all of its tangible personal property and fixtures, including, but not limited to equipment, inventory and fixtures.  The Debtor also executed an Unconditional and Continuing Guaranty dated as of April 14, 2004 (the **"2004 Guaranty"**).  Ditkowich apparently asserts in its proof of claim (No. 38) that the Debtor became obligated under the $450,000 Note by virtue of the 2004 Guaranty, and that such obligation became secured by virtue of the 2002 Security

Agreement.

18.   Payments under the $450,000 Note continued until December 19, 2005, when the Beer Garden commenced its chapter 11 case in this Court.

## THE PROOFS OF CLAIM

19.   On April 13, 2006, Ditkowich filed three proofs of claim with the court: (i) a secured claim, designated as claim no. 37, in the amount of $147,998.63, plus interest and attorneys' fees, on account of the $200,000 Note; (ii) a secured claim, designated as claim no. 38, in the amount of $287,874.67, plus interest and attorneys' fees, on account of the $450,000 Note; and (ii) a secured claim, designated as claim no. 39, in the amount of $305,917.81, plus interest and attorneys' fees, on account of the $300,000 Payment.

## AS AND FOR A FIRST CLAIM FOR RELIEF

20.   Plaintiff repeats, reiterates and realleges each and every allegation contained in paragraphs "1" through "19" of this complaint with the same force and effect as if more fully set forth at length herein.

21.   As of the Petition Date, the Debtor had one or more unsecured creditors that had the ability to avoid transfers such as, without limitation, the Debtor's guaranty of the $450,000 Note.

22.   The execution and delivery by the Debtor to the defendant of any agreements or instruments purporting to guaranty the $450,000 Note, including, but not limited to, the 2004

Guaranty, was made for less than fair consideration, in that the defendant did not provide adequate consideration to the Debtor in return for such guaranty.

23. The Debtor's execution and delivery of the guaranty (i) was done while the Debtor was insolvent or (ii) rendered it insolvent, and thus, the guaranty was fraudulent within the meaning of section 273 of the DCL.

24. Thus, the execution and delivery of its guaranty of the $450,000 Note was a fraudulent conveyance within the meaning of section 273 of the DCL, and the Debtor may avoid such guaranty.

## AS AND FOR A SECOND CLAIM FOR RELIEF

25. Plaintiff repeats, reiterates and realleges each and every allegation contained in paragraphs "1" through "24" of this complaint with the same force and effect as if more fully set forth at length herein.

26. Because the Debtor's guaranty of the $450,000 Note is avoidable as a fraudulent conveyance, claim no. 38 should be disallowed and expunged.

## AS AND FOR A THIRD CLAIM FOR RELIEF

27. Plaintiff repeats, reiterates and realleges each and every allegation contained in paragraphs "1" through "26" of this complaint with the same force and effect as if more fully set forth at length herein.

28. The execution and delivery by the Debtor to the defendant of any agreements or instruments granting to Ditkowich a security interest in its property to secure its obligations

arising under the Debtor's guaranty of the $450,000 Note,
including, but not limited to, the 2002 Security Agreement and
the 2004 Security Agreement, were made for less than fair
consideration, in that the defendant did not provide adequate
consideration to the Debtor in return for such security
interests.

29.  The Debtor's granting of the security interests
(i) was done while the Debtor was insolvent or (ii) rendered it
insolvent, and thus, the granting of such security interests was
fraudulent within the meaning of section 273 of the DCL.

30.  Thus, the granting of the security interests to
secure the Debtor's obligations with respect to its guaranty of
the $450,000 Note was a fraudulent conveyance within the meaning
of section 273 of the DCL, and the Debtor may avoid such security
interests.

WHEREFORE, the Debtor demands judgment against the
defendant:

(1) On the first claim for relief, declaring that its
execution and delivery of any agreements or instruments
guarantying the $450,000 Note, including but not limited to the
2004 Guaranty, is avoidable as a fraudulent conveyance;

(2) On the second claim for relief, disallowing and
expunging claim no. 38;

(3) On the third claim for relief, declaring that its
execution and delivery of any security interests in its property
to Ditkowich with respect to its guaranty of the $450,000 Note,
including but not limited to the 2004 Security Agreement and the

2002 Security Agreement, are avoidable as a fraudulent

conveyance, and avoiding such security interests in its property;

and

      (4) On all claims for relief, granting the Debtor such

other and further relief as the court deems just and proper,

together with the costs, disbursements and expenses, including

reasonable attorneys' fees, of this adversary proceeding.

Dated:  New York, New York
       July 26, 2006

                      SANFORD P. ROSEN & ASSOCIATES, P.C.
                      Attorneys for the Debtor and
                        Debtor in Possession

                      By: /s/ Kenneth M. Lewis
                          Kenneth M. Lewis (KL-7679)

                      747 Third Avenue
                      New York, New York 10017-2803
                      (212) 223-1100